UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BERTAZZON AMERICA, LLC, a Tennessee limited liability company, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| MATTHEW T. MCDONAGH d/b/a/ MCDONAGH MANUFACTURING, MCDONAGH MANUFACTURING, INC., a Michigan corporation, MCDONAGH AMUSEMENT, INC., a Michigan corporation, and MCDONAGH PROPERTIES, LLC, a Michigan limited liability company, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 3:12-cv-1331
Judge Trauger

## MEMORANDUM

Pending before the court are two Motions to Dismiss the Complaint in this action. Defendants McDonagh Amusement, Inc. and McDonagh Properties, LLC (the "McDonagh A&P Defendants") jointly filed a Motion to Dismiss for Lack of Jurisdiction on June 20, 2013 (Docket No. 19). Defendants Matthew T. McDonagh d/b/a McDonagh Manufacturing and McDonagh Manufacturing, Inc. (the "MM Defendants") jointly filed a Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer This Matter to the Eastern District of Michigan on July 3, 2013 (Docket No. 23). The plaintiff, Bertazzon America, LLC ("Bertazzon"), filed a consolidated Response in opposition to the motions and consented to the MM Defendants' alternative motion to transfer the action to the Eastern District of Michigan (Docket No. 29). Both sets of defendants have filed Replies (Docket Nos. 30, 34) in support of

1

their motions. For the reasons discussed herein, the defendants' motions will be denied as moot, and this case shall be transferred to the United States District Court for the Eastern District of Michigan.

## BACKGROUND

### I. Overview[1]

This action involves a dispute among amusement companies and vendors regarding the purchase, storage, and disappearance of two amusement park trains and related equipment. The plaintiff, Bertazzon, is a Tennessee limited liability corporation and, as of January 2012, a successor in interest to another Tennessee company, Ital International, LLC ("Ital"). On March 1, 2007, Ital contracted with Six Flags Great Adventure LLC in Jackson, New Jersey ("Six Flags") to purchase two used Chance CP Huntington trains, including two locomotives and eight coaches, as well as other spare parts, track rails, and ride manuals (the "Equipment") in exchange for payment of $75,000. Ital was responsible under the agreement for picking up the Equipment from Six Flags' facility in New Jersey.

#### A. The MM Defendants Buy the Coaches

Before picking up the Equipment from Six Flags, Ital entered into a contract (the "Purchase Agreement") with McDonagh Manufacturing, under which the MM Defendants agreed to purchase two of the coaches included in the Equipment (the "Coaches") from Ital for $20,000. As part of the Purchase Agreement, Matthew McDonagh ("McDonagh"), the owner of

---

[1] Unless otherwise indicated, the facts have been drawn from the plaintiff's Complaint (Docket No. 1), the Declaration of Thomas McDonagh (Docket No. 21), and the Affidavit of Matthew T. McDonagh (Docket No. 24, Ex. A).

2

McDonagh Manufacturing, agreed to pick up the Equipment from New Jersey on behalf of Ital and transport the Equipment to his facility, where the Equipment would be stored until Ital could resell it.  In return, Ital would deduct $4,000 from the $20,000 purchase price of the Coaches.  At the time of the Purchase Agreement, McDonagh informed Ital's Chief Manager, Carlo Guglielmi, that the Equipment would be stored at a property located in Chesaning, Michigan (the "Chesaning Property") and owned by McDonagh's father, Thomas McDonagh ("TM"), the owner of the McDonagh A&P Defendants and McDonagh's business partner.

McDonagh picked up the Equipment from Six Flags on April 10, 2007, and sent pictures of the Equipment to Ital.  (Docket No. 1, Ex. B.)  For the next two years, Guglielmi kept in touch with McDonagh and discussed several potential sales of the Equipment, but none came to fruition.

### B. Ital Searches for the Equipment

In March 2010, Guglielmi learned from a third-party associate, Mr. Pugh, that McDonagh had ended his partnership with his father and had begun working in Georgia.  Pugh suggested to Guglielmi that he should move the Equipment to a new facility in Georgia to be reconditioned.  Pugh also informed Guglielmi that he had contacted TM and that TM refused to release the Equipment to Pugh.

In June 2010, Ital engaged in negotiations with a potential buyer regarding a large portion of the Equipment.  Ital and the buyer discussed a purchase price of $140,000.  Ital alleges that it "attempted to locate" the Equipment in order to close the sale but was unable to effect the transaction, "due to the wrongful acts of the Defendants."

3

On September 17, 2010, Guglielmi traveled to see McDonagh at a carnival in Chattanooga, Tennessee to inquire about Ital's Equipment. McDonagh advised Guglielmi that Ital should pick up the Equipment from the Chesaning Property. McDonagh further explained that part of the Equipment was stored inside a building on the property, and additional pieces were stored within a fenced outdoor area. Based upon this information, Guglielmi sought out a repair shop to assist Ital with reconditioning the trains and discussed a deal with a third party that agreed to fully recondition one of the two locomotives in return for payment.

### C. Ital Communicates with TM

Shortly after his meeting with McDonagh in Chattanooga, Guglielmi telephoned TM to request permission to pick up the Equipment from the Chesaning Property. TM informed Guglielmi that the Equipment was not at his property and that TM did not know where the Equipment was being stored. On November 29, 2010, Guglielmi met with TM at a trade show in Las Vegas, Nevada, to again inquire about the Equipment. TM denied any knowledge of the Equipment and directed Guglielmi to contact his son. In a letter dated December 2, 2010, Guglielmi again contacted TM and asked for an explanation for the disappearance of the Equipment. Guglielmi informed TM that, without more information on the Equipment's whereabouts, Ital would file a police report related to the missing Equipment. On December 13, 2010, the McDonagh A&P Defendants' legal counsel responded to Guglielmi's letter and directed Ital to contact the MM Defendants about the Equipment. Later that month, Guglielmi wrote a final letter to TM regarding the Equipment's whereabouts and did not receive a response.

4

On March 17, 2011, McDonagh informed Guglielmi that the Equipment was stored at the Chesaning Property and explained to Guglielmi that his father, TM, was also refusing to give McDonagh other personal property that had been stored at the Chesaning Property.

On January 1, 2012, Ital assigned its claims against the defendants to Bertazzon, the plaintiff.

## II.     The Action

Bertazzon filed this suit against the defendants on December 28, 2012. Bertazzon's Complaint includes the following counts against all defendants: (1) breach of contract; (2) unjust enrichment; (3) conversion; and (4) negligent bailment. Bertazzon seeks damages against both sets of defendants for the value of the Equipment and any gross sales profit that may have resulted from the sale of the Equipment.

## ANALYSIS

Both sets of defendants have moved to dismiss the plaintiff's claims, arguing that this court lacks personal jurisdiction over them. The MM Defendants also request that, if the court does not dismiss the plaintiff's claims, it grant their motion to transfer venue from this court to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). In their consolidated response in opposition to the defendants' motions to dismiss, the plaintiff consents to the request to transfer venue. However, because the court may not transfer a case under Section 1404(a) unless it has personal jurisdiction over the defendants,[2] the court must first address the jurisdictional issues.

---

[2] *See Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993).

5

**I.     Motions to Dismiss for Lack of Personal Jurisdiction**

 **A.  Standard**

In considering a motion to dismiss for lack of personal jurisdiction, a court has three options.  It may (1) rule on the motion on the basis of the affidavits submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion.  *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).  It is in the court's discretion, based on the circumstances of the case, which path to choose.  *Id.*  In any proceeding, however, the party asserting jurisdiction has the burden of proof.  *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002).  "Additionally, in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

No party has requested an opportunity for discovery or an evidentiary hearing; therefore, it is entirely appropriate here for the court to decide the jurisdictional issue based on the affidavits presented.  *Theunissen*, 935 F.2d at 1458.  When a court rules on a motion to dismiss for lack of personal jurisdiction based upon the affidavits, the party asserting jurisdiction need only make a *prima facie* showing of jurisdiction to defeat the motion.  *Id.*  In examining whether the party asserting jurisdiction has made this *prima facie* showing, the court is to construe the facts presented in the light most favorable to that party, and the court does not weigh or consider the conflicting facts presented by the other side.  *Bird*, 289 F.3d at 871; *see also Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360-61 (6th Cir. 2008) (referring to the plaintiff's burden in this context as "relatively slight").

Here, the issue of whether this court may exercise personal jurisdiction over the defendants depends on the specific limitations of Tennessee's long-arm statute and the constitutional principles of due process. *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003). Tennessee's long-arm statute has been consistently construed to extend to the limits of federal due process, and, therefore, the two inquiries are merged, and the court here need only determine whether exercising personal jurisdiction over the defendants is consistent with federal due process requirements.[3] *Id.*

In order for due process to permit the exercise of personal jurisdiction over non-resident defendants, such as the MM Defendants and the McDonagh A&P Defendants, the defendants must have "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court has identified "general" jurisdiction and "specific" jurisdiction as distinct

---

[3] Tennessee's long-arm statute, as codified at T.C.A. § 20-2-214, provides, in relevant part: (a) Persons who are non-residents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from: (1) The transaction of any business within the state; (2) Any tortious act or omission within this state; (3) The ownership or possession of any interest in property located within this state; (4) Entering into any contract of insurance, indemnity, or guaranty covering any Person, property, or risk located within this state at the time of contracting; (5) Entering into a contract for services to be rendered or for materials to be furnished in this state; (6) Any basis not inconsistent with the constitution of this state or of the United States; (7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

bases for personal jurisdiction. A demonstration of the contacts necessary for either basis is sufficient to establish personal jurisdiction. *Id.* at 417-18. In the present case, the plaintiff claims in its Complaint and in its Response in opposition to the defendants' motions that the court possesses both general and specific jurisdiction over all of the defendants.

1. General Jurisdiction

A court may exercise general jurisdiction over a non-resident defendant when his contacts "are so continuous and systematic as to render [him] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (internal quotation marks omitted). In such instances, a court may exercise jurisdiction over claims that are unrelated to a non-resident defendant's contacts with the forum. *Id.* at 2853-54. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 2853.

2. Specific Jurisdiction

The assertion of specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy," such as an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 131 S. Ct. at 2851 (internal quotation marks and citations omitted). Unlike general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

The Sixth Circuit has established a three-part test for determining whether the exercise of specific jurisdiction is consistent with the principles of due process, called the *Mohasco* test. *See S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1969). Under this test, the

exercise of such jurisdiction is proper if the court finds: "(1) purposeful availment 'of the privilege of acting in the forum state or causing a consequence in the forum state,' (2) a 'cause of action . . . aris[ing] from activities' in the state, and (3) a 'substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (quoting *Mohasco*, 401 F.2d at 381). If any of the three requirements is not met, personal jurisdiction may not be invoked. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012). Finally, while a motion to dismiss for lack of specific personal jurisdiction may be maintained based on prongs two and three of the *Mohasco* test, purposeful availment is the *sine qua non*, or absolutely indispensable, element of personal jurisdiction, and, therefore, disputes about whether or not there is specific personal jurisdiction in a given case often rise or fall on the issue of purposeful availment. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550-51 (6th Cir. 2007).

## II. The Defendants' Motions to Dismiss

In this case, the McDonagh A&P Defendants' Motion to Dismiss is supported by the affidavit of Thomas McDonagh, President of McDonagh Amusement and the Chief Manager of McDonagh Properties. The MM Defendants' Motion to Dismiss is supported by the affidavit of Matthew T. McDonagh, the former owner and operator of McDonagh Manufacturing, Inc. In response to the defendants' motions, the plaintiff submitted only a brief memorandum and did not contest the affidavits submitted by the defendants. Consequently, the only evidence submitted by the plaintiff in support of personal jurisdiction over the defendants is the

9

pleadings.[4] The Sixth Circuit has consistently held that a plaintiff cannot meet the burden of a *prima facie* showing of personal jurisdiction without evidentiary support. *Thenuissen*, 935 F.2d at 1458.

Even if the court were to consider the evidence presented by the plaintiff on its merits, the plaintiff could, at most, argue that it presents a factual basis for specific jurisdiction over the defendants.[5] To succeed, Bertazzon must demonstrate that the defendants purposefully availed themselves of the privilege of acting in Tennessee so as to make jurisdiction in this court proper and reasonable.[6]

---

[4] The plaintiff attached three exhibits to his pleadings: (1) the 2007 contract between McDonagh and Ital regarding the sale of the Coaches for $20,000; (2) alleged photographs of the Equipment being loaded by McDonagh; and (3) a letter written by Carlo Guglielmi of Ital to the McDonagh A&P Defendants. (Docket No. 1, Exs. A-C.)

[5] The plaintiff fails to submit an allegation—much less evidentiary support—that could sufficiently justify the exercise of general jurisdiction over the defendants. Even read generously, the Complaint does not set forth any allegations of continuous or systematic contact between the defendants and Tennessee. As an initial matter, the plaintiff admits that all defendants are residents of Michigan. (Docket No. 1 ¶¶ 2-5.) Moreover, the plaintiff does not submit that any of the defendants operated a business in Tennessee, engaged in an ongoing relationship with Tennessee, or any other form of contact between the defendants and Tennessee that could render the defendants essentially "at home" in Tennessee. (Docket Nos. 21, 24, Ex. A.)

[6] In addition to its failure to submit factual support in opposition to the defendants' motions to dismiss, the plaintiff's position that personal jurisdiction exists over the defendants is impaired by its faulty legal analysis. Instead of discussing the appropriate minimum contacts analysis, Bertazzon argues that personal jurisdiction is proper pursuant to the plain language of the Tennessee long-arm statute because the defendants committed a tortious act outside of Tennessee—the alleged "loss or disappearance of [the Equipment]"—that caused significant monetary damages in Tennessee. (Docket No. 29 at 2.) The court need not address this

**A. Purposefully Avail**

Before a defendant may be sued in a forum, the defendant must "purposefully avail" itself of the "privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citation and quotation omitted). This "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Id.*

Purposeful availment is "something akin to a deliberate undertaking," that is, a deliberate effort by the defendant to direct its activities toward, and to make contact with, the forum. *Bridgeport Music,* 327 F.3d at 478 (internal quotation omitted). Purposeful availment exists "when the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum state, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.* (internal quotation omitted).

1. The McDonagh A&P Defendants

The plaintiff has failed to demonstrate that this court has specific jurisdiction over the McDonagh A&P Defendants. At most, Bertazzon offers an unsupported allegation that the McDonagh A&P Defendants received a handful of communications from Ital and, only once, *sent* a letter through counsel to Ital in Tennessee.

---

improper standard because, under settled Sixth Circuit law, the appropriate analysis is the *Mohasco* test.

The Complaint sets forth that Guglielmi, on behalf of Ital, contacted TM by phone, letter, and, on one occasion, in person in Las Vegas, Nevada regarding the Equipment. It further alleges that, in December 2010, the McDonagh A&P Defendants' legal counsel replied to Guglielmi—presumably in Tennessee—and directed him to contact the MM Defendants. These allegations plainly fail to demonstrate purposeful availment. There is nothing in the record to indicate that the McDonagh A&P Defendants made any effort to "reach out" to Tennessee or made any "substantial connection" with Tennessee. Therefore, the plaintiff has failed to make out a *prima facie* case of personal jurisdiction as to the McDonagh A&P Defendants.

    2.   The MM Defendants

Similarly, there is no evidence in the record to show a substantial link between the MM Defendants and Tennessee. The Complaint sets forth two allegations that, read liberally, are relevant to purposeful availment: (1) the execution of a Purchase Agreement between Ital, a Tennessee resident, and McDonagh Manufacturing (Docket No. 1, Ex. A) and (2) a meeting in Chattanooga, Tennessee between McDonagh and Guglielmi (*Id.* ¶ 15).

Initially, as a matter of law, the Purchase Agreement is insufficient to demonstrate that the MM Defendants purposefully availed themselves of the privilege of acting in Tennessee. *See Burger King Corp.*, 471 U.S. at 478; *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722-24 (6th Cir. 2000) (holding that a contract is insufficient to satisfy due process when none of the terms of the contract was to be performed in the forum state). Additionally, although the plaintiff alleges that McDonagh visited Tennessee to operate a carnival in 2010, it is undisputed that McDonagh's visit was unrelated to the Purchase Agreement, the Equipment, the plaintiff, or the plaintiff's cause of action. (Docket No. 1 ¶ 15.) This meeting, as well as the other six brief visits

that McDonagh admits that he made to Tennessee between 2010 and 2013 while working with a different amusement company, are insufficient to indicate that the MM Defendants made a "substantial connection" to Tennessee. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996). Therefore, purposeful availment has not been shown.

### III. <u>Motion to Transfer Venue</u>

The MM Defendants request that, if the court does not dismiss the plaintiff's claims, it transfer this case to the United States District Court for the Eastern District of Michigan pursuant to Section 1404(a). The plaintiffs consent to this request. Under settled Sixth Circuit law, however, the court may not transfer an action under Section 1404(a) when it lacks personal jurisdiction over the defendants. *Pittock*, 8 F.3d at 329; *see also Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980).

But another statute, 28 U.S.C. § 1631, is relevant here. It states that, when a district court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer" the case "to any other such court in which the [case] . . . could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. The Sixth Circuit has explained that Section 1631 confers "broad discretion" on the district court in determining whether to transfer or dismiss an action. *Stanifer v. Brannan*, 564 F.3d 455, 456-57 (6th Cir. 2009). The issue, then, is whether transfer of this case is "in the interest of justice."

The MM Defendants submit compelling justifications for why justice would be best served by transferring the case to the Eastern District of Michigan. They argue that the totality of the circumstances support such a transfer because (1) the Eastern District of Michigan possesses personal jurisdiction over all defendants, (2) virtually every witness is located in the

Eastern District of Michigan, (3) all of the defendants' documents and records are located in the Eastern District of Michigan, and (4) the operative facts arise from alleged acts occurring in Michigan.  (Docket No. 24 at 12.)  Given the consent of the plaintiff, the court will transfer this action to the United States District Court for the Eastern District of Michigan in the interest of justice.

## CONCLUSION

For these reasons, the McDonagh A&P Defendants' Motion to Dismiss for Lack of Jurisdiction (Docket No. 19) and the MM Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 23) will be denied as moot, and the case shall be transferred to the United States District Court for the Eastern District of Michigan.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge